Delivered December 12, 1890.

---

THE GULF, COLORADO & SANTA FE RAILWAY COMPANY v. W. H. GATEWOOD.

No. 6689.

1. **Stipulated Limitation.**—It is no longer an open question in this State whether the conventional limitation of forty days stipulated for and agreed upon in the contract for shipment of cattle upon a railroad is reasonable and binding.

2. **Same—Case Adhered to.**—Railway v. Trawick, 68 Texas, 314, adhered to in holding that if the suit was not brought within the forty days after the injury accrued it was barred unless the plaintiff could show some reasonable excuse for the delay.

3. **Labor Strikes.**—The existence of a strike among railway employes, obstructing the operation of the road and the carrying of freight, will excuse delay in the carrying of freight caused by such strike. ·

APPEAL from Johnson. Tried below before Hon. J. M. Hall.

A sufficient statement is given in the opinion.

*Smith & Davis* and *J. W. Terry*, for appellant.—1. The court erred in his charge to the jury in making the defendant absolutely liable for the damages claimed by plaintiff in case the defendant failed to deliver the cattle of plaintiff in Chicago, Illinois, within a reasonable time, and in the time reasonably taken to deliver cattle from Blum, Hill County, Texas, at Chicago, Illinois; and instead of so instructing the jury he

should have.told them that a railroad common carrier stands upon the same footing as other common carriers, and may excuse delay in the delivery of cattle by accident or misfortune not inevitable or produced by acts of God, and all that can be required of it in any emergency is that it shall exercise due care and diligence to guard against delay. Grimer v. Railway, 26 Am. and Eng. Ry. Cases, 290; Wibert v. Railway, 12 N. Y., 245; Blockstock v. Railway, 20 N. Y., 48; Railway v. Bennett, 6 Am. and Eng. Ry. Cases, 391; Bartlett v. Railway, 18 Am. and Eng. Ry. Cases, 549.

2. The appellant asked two special instructions, applicable to the facts as they were in evidence, which the court should have given, but failed to do so. The failure to give these charges is assigned as error in the eighth assignment of error, but are referred to here as a place proper for that purpose.

Special instruction No. 2 is: " The jury are instructed that if they believe from the evidence that more than forty days had elapsed from the time plaintiff's cause of action had accrued (and you are instructed that plaintiff's cause of action accrued when he received the account of sales sent to him, plaintiff, by Gregory, Cooley & Co. by the brother of plaintiff) and the institution of this suit, which was on June 21, 1886, you will find for defendant."

The fourth special instruction asked by appellant and refused by the court is as follows: "The jury are instructed that if they believe from the evidence that Gregory, Cooley & Co., consignees of plaintiff, forwarded to him an account of sales of plaintiff's cattle from Chicago by the brother of plaintiff, and that the same was received by plaintiff on or before May 1, 1886, then you are instructed the defendant should recover in this case, for you are instructed that more than forty days elapsed from the time when plaintiff knew, or might have known by the exercise of ordinary care and prudence, of his damage, and the institution of this suit, which was on June 21, 1886." Railway v. Trawick, 68 Texas, 314.

3. The third special charge asked by the defendant and refused by the court is as follows: "If the jury believe from the evidence that damage claimed by plaintiff was caused by a greater force than the defendant could control, such as a lawless combination on the part of the employes of the Missouri Pacific and Texas & Pacific Railway companies, whereby said companies were prevented from shipping plaintiff's cattle as connecting lines of defendant, and that defendant carried said cattle to Fort Worth, Texas, and tendered them to the Missouri Pacific Railway and the Texas & Pacific Railway, and that said last named railway companies were prevented from receiving and shipping said cattle by what is called a strike—that is, the voluntary abandonment of their employment of any number of men, coupled with a combination or conspiracy by them to prevent by intimidation or violence other persons from assuming the posi-

tions they have relinquished, and by other violent methods to prevent their late employer from pursuing in a peaceful manner his calling or business until their grievances, whether real or fancied, are satisfactorily adjusted in such a manner as they shall dictate them—in that case you will find for the defendant." This should have been given.

*Poindexter & Padelford,* for appellee.— 1. The charge of the court complained of is not detrimental to appellant's rights, but is more favorable to appellant than it should be under the facts, the said clause in the bill of lading requiring suit to be brought in forty days after the damage shall occur being under the facts of this case unreasonable, against public policy, and null and void. Railway v. Harris, 67 Texas, 168; Express Co. v. Donnell, 6 S. W. Rep., 765; Express Co. v. Caperton, 44 Ala., 101; Express Co. v. Reagon, 29 Ind., 21; Capehart v. Railway, 81 N. C., 438.

2. But should it be holden that said forty day clause under the facts of this case is not unreasonable and void, still the court did not err in giving the charge complained of, because the facts of this case justified such a charge. Peoria Ins. Co. v. Hall, 12 Mich., 204; Wood on Lim., p. 81.

3. The strike affected only the Missouri Pacific Railway. The cattle could have been forwarded without delay upon other routes. The facts do not support this defense.

ACKER, PRESIDING JUDGE.—On the first day of March, 1886, the Gulf, Colorado & Santa Fe Railway Company received from W. H. Gatewood, at Blum Station in Hill County, Texas, three car loads of cattle, sixty in number, to be transported to Chicago in the State of Illinois, for the consideration of $105 per car, and there delivered to Gregory, Cooley & Co. The cattle were not delivered at Chicago until the 5th day of April, 1886, and Gatewood brought this suit against the railway company on the 21st day of June, 1886, to recover damages as follows: For decrease in weight and value of cattle caused by delay in transporting them to their destination, $600; for difference in market price of the cattle at the date of their delivery in Chicago and at the date when they should have been delivered there, $491.31; for board and hire of hands during the time the cattle were delayed, $60; for overcharge in freight and feed bills, $400.

The cattle were received by the railway company and shipped under a written contract, in which Gatewood expressly waived and relinquished to the company and its connecting lines all right to any damages he might otherwise have claimed, and expressly assumed all risk of damage resulting from delay in the transportation of the cattle occasioned by any mob or strike or threatened violence to person or property. By said contract it was provided and mutually agreed that no suit or action for the recovery of any claim thereunder should be sustainable unless such suit or action was commenced in forty days next after the damage occurred, and

that should any suit be brought after the expiration of said forty days the lapse of time should be taken as conclusive evidence against the validity of the claim sued on.

It was further stipulated in said contract and agreed to between the parties that in case the cattle were to be transported over the road of any other company the Gulf, Colorado & Santa Fe Company should be released from liability of every kind after the cattle left its road, except to protect the through rate of freight.

This contract was specially pleaded by the defendant in answer to plaintiff's cause of action; and the defendant further answered that plaintiff ought not to recover, because if the cattle were delayed and not transported to Chicago in the usual and ordinary time, and were reduced in flesh, etc., as alleged, that the same was not attributable to the negligence of defendant, but was owing to a strike on the Missouri Pacific and Texas & Pacific railway lines; and that the cattle were shipped from Blum to Fort Worth in due time and in good condition, and were at once and many times afterwards tendered to those companies, and they would not receive them, and could not do so, because the employes of said companies had abandoned their employment and refused to work, and banded themselves together for the purpose of preventing any other persons taking their places, and did prevent all persons from taking their places and working for said companies for thirty days from March 1, 1886, and that said companies made all efforts to and did provide other laborers to take the places of those who had refused to work, but the employes so refusing would not allow the persons so employed to work; and the strikers did take possession of the engines, cars, and trains of said companies, and would not allow them to run their trains out of the city of Fort Worth, and that these lines of railway are the only practical ways of carrying cattle from Fort Worth to Chicago; and that the military forces were called out to quell said strike; and that therefore the delay in shipping said cattle was caused by a *vis major*, which defendant could not prevent or overcome; and specially pleaded the contract of plaintiff in regard to damage by mob force or strike in bar of recovery; and further specially pleaded that plaintiff did not bring the suit in forty days after damage occurred, and that therefore his claim was barred by the limitation of time agreed upon in the contract.

The trial resulted in verdict and judgment for plaintiff for $1021, and defendant appealed. It appears from the evidence that at the time the contract was entered into both parties contemplated that the cattle should be transported from Fort Worth over the lines of the Missouri Pacific Railway Company. The cattle arrived at Fort Worth on the morning of March 2, 1886, accompanied by plaintiff's brother, and were promptly tendered to the Missouri Pacific Railway Company, which refused to receive them because of its inability to move its freight trains in consequence

of a strike which had that day been inaugurated by the employes of that company and by the employes of the Texas & Pacific Railway Company.

On refusal of the Missouri Pacific Company to receive the cattle they were taken out of the cars and put into the stock pens of the Texas & Pacific Railway Company at Fort Worth, and remained there until the 20th day of March, when they were shipped to Chicago over the line of that company at a cost of $110 per car. Plaintiff's brother remained with the cattle at Fort Worth several days and returned to his home, after which plaintiff was in Fort Worth and saw the cattle there in the pens.

Plaintiff was not notified when the cattle left Fort Worth for Chicago, and sent no agent or representative with them. The cattle were delivered by the Illinois Central Railway Company to the consignees in Chicago—Gregory, Cooley & Co.—on the 5th day of April, and on that day sold by the consignees for the gross sum of $2316.18. When the cattle were delivered they were not billed in the name of any one, and were received by the consignees and entered on their books in the name of the last carrier, the Illinois Central Railway Company, to which all charges for freight and feed were payable, though the consignees knew when they received the cattle that they belonged to plaintiff, one of them having seen the cattle in the pen at Fort Worth and the firm having advanced plaintiff money on them.

A few days after the cattle left Fort Worth plaintiff presented to defendent's agent there a claim for $1560 damages for delay in transporting the cattle to Chicago. During the time the cattle were delayed at Fort Worth the defendant repeatedly tendered them to both the Missouri Pacific and the Texas & Pacific Railway companies, who refused to receive them because of their inability to move their freight trains on account of the strike.

On the 5th day of April the brokers, Gregory, Cooley & Co., to whom the cattle were consigned made an account of sale of the cattle in the name of the Illinois Central Railway Company and sent it to plaintiff, who received it on the 12th day of April, 1886. The account of sale showed an expense account paid by the brokers for freight, feed, yardage, and commissions of $802.65, and net proceeds $1513.53. Between the 24th day of April and the 1st day of May, 1886, the defendant notified the plaintiff that his claim for damages would not be paid.

The foregoing is a substantial statement of the facts bearing upon the only two questions we deem it necessary to consider, and they are presented by the twelfth assignment of error, under which it is contended that the verdict is contrary to the evidence, first, because it clearly appears that more than forty days had elapsed from the time plaintiff's cause of action accrued before the institution of the suit; and second, because it appears that if plaintiff sustained any damage it was not caused

by the acts of defendant, but by a combination of lawless men at Fort Worth, constituting a *vis major*, which the defendant could not control.

It is no longer an open question in this State whether the conventional limitation of forty days stipulated for and agreed upon in the contract is reasonable and binding. That question was settled in the affirmative by the decision in the case of the Gulf, Colorado & Santa Fe Railway Company v. Trawick, 68 Texas, 314, in which it was held that such limitation was valid, though the contract was to be performed wholly within this State. If the suit was not brought within the forty days after the injury occurred it was barred and cannot be maintained, unless the plaintiff could show some reasonable excuse for the delay. If the defendant, by negotiations for settlement or otherwise, so acted as to justify a reasonable belief on the part of the plaintiff that his claim would be settled without suit, and the plaintiff acting on such belief did not institute his suit until after the expiration of the forty days, the defendant would be estopped from invoking the limitation.

It clearly appears from the evidence that the plaintiff presented his claim for damages in March; that he received the account of the sale of his cattle on the 12th day of April, by which he was as fully informed as to the extent of his damage as he ever was afterwards, and this suit was not brought until the 21st day of June. There is no pretense that any act of the defendant induced the delay, nor could there be such pretense in the face of the uncontroverted fact that the plaintiff was informed by the defendant as early as the 1st day of May that his claim for damages would not be paid. We think that the evidence conclusively shows that plaintiff's cause of action was barred by the limitation agreed upon in the contract at the time the suit was brought, and that the jury should have found accordingly.

The rule which makes common carriers liable for every loss except such as is occasioned by the act of God or the king's enemy was not a part of the ancient common law. It had its origin in what was supposed to be the commercial necessities of England at a time when government afforded imperfect protection to goods in transit, and when robberies were of frequent occurrence. It was first recognized and received its first judicial announcement as a principle of law in the Woodliefe and Curtis case, decided in the thirty-eighth year of the reign of Elizabeth, now nearly three centuries ago. Van Santvoord v. St. John, 6 Hill, 157.

Sir Edward Coke announced as the reason of the rule, that "a carrier is liable in respect of his reward, and not of the hundred being answerable over to him, for the hundred is liable by the statute of Winchester; and the reason why robbery did not excuse him was because it might be by consent and combination carried on in such a manner that no proof could be had of it." Lane v. Cotton, 1 Salk., 143. The fact that the common carrier has his reward or hire can not be accepted as the reason

of the rule, for other bailees and private carriers for hire have their reward as the common carrier has, and yet the rule does not apply to them. So the only plausible reason of the rule furnished by the earlier decisions is that the shipper might lose his goods by collusion between the carrier and lawless persons, thieves, or robbers.

The rule has been adopted by the American courts, and many of them, without regard to the reason of it, have been constrained by precedent to apply it in cases where its application worked the grossest injustice.

To protect themselves against the injustice and hardship of a rule of law which requires them to do a particular thing, whether or not that thing be possible to accomplish by the use of all diligence and every agency available to them, common carriers have adopted the custom of receiving and transporting freight under special contract, as was done in this case. They are, of course, liable in any case for damages resulting from their negligence; but, independent of special contract, they are not liable for damages resulting from delay occasioned by any cause beyond their power to control by the use of all means reasonably available to them. If such defense is available without being stipulated for by special contract, they certainly may claim such exemption under a special contract. Railway v. Levi, 76 Texas, 337; Railway v. Bennett, 6 Am. and Eng. Ry. Cases, 391; 18 Id., 549; Hutch. on Car., sec. 119. This exemption from liability for damages so occasioned is available to the carrier whether the contract of shipment be interstate or whether it is to be performed wholly within this State.

The evidence shows conclusively that the delay was occasioned by no other cause than a *vis major,* a strike and mob violence of such magnitude as required the military forces of the government to overcome, and which was not suppressed without bloodshed.

We think the evidence fails to show any negligence on the part of the defendant, but on the contrary does show that it diligently endeavored to forward the cattle over the line of road that was contemplated by both parties at the time of the shipment, and that failing in that because of the strike, availed itself of the first opportunity to forward them by the next most practical and expeditious route to their destination.

We are of opinion that the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted December 9, 1890.

Motion for rehearing filed and argued by *Poindexter & Padelford,* for appellee. Motion overruled, Galveston, 1891.