[No. 4921.    Decided December 30, 1904.]

G. H. OVINGTON *et al., Respondents,* v. THE AETNA INDEMNITY COMPANY, *Appellant.*[1]

INDEMNITY—INSURANCE—BOND GUARANTEEING BUILDING CONTRACT—NOTICE OF ACTS INVOLVING LOSS—CONSTRUCTION—RELEASE OF SURETY. An indemnity bond or policy guaranteeing the performance of a building contract, which stipulates that notice must be given the surety of any act on the part of the contractor which may involve a loss, does not require the giving of notice that the contractor has failed to pay the employees, and a notice given as soon as the claimants sought to make their claims charges against the property is in time to prevent the discharge of the surety.

INDEMNITY—BUILDING CONTRACT—ACTION ON BOND—ACCRUAL—DATE OF FIRST BREACH—DELAY IN COMPLETION OF BUILDING. Where an indemnity bond, guaranteeing a building contract, provided that actions thereon must be instituted within six months after the first breach of the contract, and the owner accepted the building after delay in its completion, the surety cannot claim that the right of action on the bond was barred six months after the time specified in the contract for the completion of the building, since the surety cannot complain of waiver of any breach of the contract by the owner's acceptance of the building, when such waiver did not operate to the prejudice of the surety.

SAME—ALTERATION IN CONTRACT INCREASING COST OF BUILDING—RELEASE OF SURETY. The surety in an indemnity bond guaranteeing a building contract is not released by reason of the fact that changes were made in the plans as the work progressed, increasing the cost of the building, where the building contract provided that such changes might be made.

[1]Reported in 78 Pac. 1021.

Appeal from a judgment of the superior court for King county, Hatch, J., entered July 24, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action upon an indemnity bond. Affirmed.

*Root, Palmer & Brown,* for appellant.

*Ira Bronson,* for respondents.

FULLERTON, C. J.—In May 1902 the respondents entered into a contract in writing with one B. Colling, by the terms of which Colling agreed to furnish all of the necessary labor and material, and erect, for the respondents, a dwelling house, according to plans and specifications therein specially mentioned and described. The consideration for the construction of the building was $3,300. The contract also provided that Colling should furnish a bond in the sum of $2,000, to secure the faithful performance of the contract on his part. Following out this requirement of the contract, the contractor procured the appellant to become his surety, paying it therefor a cash consideration called a premium. The bond given recited, in general terms, the execution of the contract between the respondent and Colling, and contained a general condition to the effect that it was to be void in case Colling should well, truly, and faithfully comply with such conditions, otherwise to remain in full force and effect. The general condition, however, was subject to a number of provisos, among which were the following:

"Provided, that the said surety shall be notified in writing of any act on the part of the said principal, his agent or employees, which may involve a loss for which said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of the fully authorized representative or representatives of George H. Ovington and wife who shall have the super-

vision of the completion of said contract, and a registered letter mailed to the office of Clemens & O'Bryan, Manager of the Aetna Indemnity Company, at Portland, Oregon, shall be deemed sufficient notice within the meaning of this bond. . . . And Provided further: that any suit at law or proceedings in equity brought against this bond to recover any claim hereunder, must be instituted within six months after the first breach of said contract."

By the terms of the contract the dwelling was to have been completed within 120 days from the 12th day of May, 1902. It was in fact completed about the 1st of December of that year. Shortly after its completion, numerous liens were filed against the building and the land on which it was situate, by laborers and materialmen, to secure themselves for labor and material furnished the contractor, and used in the construction of the building. Some of these liens were afterwards prosecuted to judgment, and became fixed charges against the respondents' property. The respondents thereupon instituted this action against the appellant to recover the amount of such liens, and afterwards recovered a judgment for the sum of $1,865.14. This appeal is from that judgment.

It appears from the evidence, and the trial court found, that as early as September, following the execution of the contract, the respondents were notified by two persons who had performed labor on the building that their wages for such services, amounting to some $25 each, had not been paid by the contractor. The respondents did not notify the bond company of this fact, and it is contended by the company now that this prevented a recovery on the bond, because being a breach of that condition providing that notice should be given it of any act on the part of the contractor which might involve a loss for which it, as surety, was responsible under the terms of the bond. It seems to us, however, that this cannot be the meaning of

this clause of the bond.  To give it that construction is to say that the contract forbids the incurring of any indebtedness by the contractor for the construction of the building.  If the contractor should buy a keg of nails, a load of lumber, employ a person to labor upon the building, or in fact do anything looking to the erection of the building, without paying for the particular article or service in advance, it would be an act on the part of the contractor which might involve a loss for which the surety would be responsible under the terms of the bond, and, of course, if known to the owner or his representative, would require the owner to give notice thereof, in order to prevent the discharge of the surety.  But it is evident that this is not what the parties to the contract contemplated.  The obligation on the part of the contractor to furnish the necessary material and labor to complete the building, means, as between the contractor and owner, that the contractor will not suffer the cost of such material and labor to become a charge upon the property of the owner, and, until they do become such a charge, there is no obligation on the part of the owner to pay for them, and hence no right of recovery against the surety.  The owner cannot know, from the mere fact that the contractor has used his credit in the purchase of labor or material for the construction of the building, that the cost of the same will be made a charge against his property.  He knows that fact only when legal steps are taken to make the cost such a charge, and, as the primary purpose of the bond is to secure to the owner the faithful performance of the contract on the part of the contractor, its language must receive a reasonable construction to that end. It must be given the usual and ordinary meaning the language would have when considered with reference to the subject-matter under consideration, and the evident

purpose and intent of the parties. To say that it means that the owner must give notice of every act of the contractor which may, by some remote possibility, ripen into a charge against the property, is not to follow this rule; it is to give it a construction subversive of its purpose, making the bond a trap for the unwary rather than a business like attempt to furnish security for a very common undertaking. As the owner notified the surety of those claims as soon as the claimants sought to make their claims charges against his property, we hold the notification to have been in time to prevent the discharge of the surety.

The appellant next complains that the action was not commenced in time, because not commenced within six months of the time the contractor agreed to complete the building, but this question was met and determined adversely to this contention in the case of *Beebe v. Redward,* 35 Wash. 615, 77 Pac. 1052, and reference is made to that case for the reasons upon which the conclusion is rested.

The appellant next complains that the trial court erred in refusing to permit him to show that changes were made in the original plans of the building, as the work progressed, entailing an additional cost to the contractor of some $400, but we find no error in this. The contract itself provided in terms that such changes might be made, and of course the possibility of such changes must have been in the contemplation of the surety at the time it entered into the bond. The fact that the unpaid obligations of the contractor may have been increased because of such changes does not affect the case, as increase of costs was as much contemplated and provided for by the contract as were decreases in the cost of construction.

The judgment appealed from is affirmed.

HADLEY, MOUNT, ANDERS, and DUNBAR, JJ., concur.