[No. 8346.    Department One.    March 26, 1910.]

WILLIAM F. SHEARD, *Appellant*, v. UNITED STATES FIDELITY & GUARANTY COMPANY, *Respondent*.[1]

INDEMNITY — BREACH OF BUILDING CONTRACT — LIMITATIONS—ACCRUAL OF ACTION. Under a contractor's indemnity bond, in which the obligee assumes to indemnify the owner against any pecuniary loss resulting from the breach of any of the terms of the building contract, the actual substantial breach does not occur, where liens are filed for labor and material, until the liens become an established charge against the property.

SAME—CONTRACT AS TO LIMITATIONS—REASONABLENESS. A limitation in a contractor's indemnity bond executed July 22, to the effect that no suit shall be maintained thereon after February 22 following, is unreasonable and therefore not binding on the parties, where the bond indemnified the plaintiff from any pecuniary loss by reason of the contractor's agreement to· build a house costing about $15,000, within 120 days, the contractors became insolvent in January following, when a receiver was appointed, who completed the house in June following, and liens for labor and material filed

[1]Reported in 107 Pac. 1024; 109 Pac. 276.

after the time stipulated for bringing suit were not finally established until two years later; since ascertainment of the amount of the loss was not possible until long after the limitation had expired.

INDEMNITY—CONTRACTOR'S BOND—LIABILITY — UNPAID ATTORNEY'S FEES. A contractor's bond indemnifying against loss by reason of the breach of the building contract being one of indemnity, recovery cannot be had for $1,000 attorney's fees allowed in lien foreclosures, where only $250 of the same had been paid by plaintiff before commencing his action on the bond.

SAME—DAMAGES—LIQUIDATED DAMAGES. Where a building contract provided stipulated damages of $10 per day for each day's delay in completing the building, and authorized a deduction thereof from the contract price, the owner is not obliged to apply any part of such damages to the satisfaction of obligations incurred by the contractor for which an indemnity bond was given.

SAME. A surety company indemnifying against loss on a building contract, having had the option to assume and complete the building and failed to exercise it, cannot complain of demurrage stipulated as damages for delay in completing the work.

SAME—DAMAGES—EXTRA WORK. In an action upon a contractor's bond indemnifying against loss by reason of a breach of a building contract, there can be no recovery for extra work not embraced in the contract.

SAME—DEFENSES—FORMER ACTION —FINDINGS — CONCLUSIVENESS. An owner who is a party to lien foreclosure suits is precluded, in his subsequent action upon the contractor's bond, from asserting that findings in the lien suit were not within the issues and not binding upon him, in the absence of the record in that case.

SAME—DAMAGES—COSTS OF FORMER SUIT. In an action upon a contractor's bond indemnifying against loss by reason of a breach of the building contract, the plaintiff cannot recover the costs of defending lien foreclosures which were not taxed or legally taxable, nor for costs in resisting a claim established against him for extra work not covered in the contract.

COSTS—ON APPEAL. Upon reversal of case with directions for judgment and allowance of certain expenses as costs, the amount of which does not appear in the record on appeal, the costs allowable are to be submitted to and determined by the lower court.

Appeal from an order of the superior court for Pierce county, Shackleford, J., entered August 14, 1909, granting defendant a new trial, after judgment entered upon the ver-

dict of a jury rendered in favor of the plaintiff, in an action upon a contractor's indemnity bond.   Reversed.

*F. S. Blattner* and *L. B. da Ponte*, for appellant.

*Frederick H. Murray*, for respondent.

Gose, J.—On the 22d day of July, 1905, the appellant, the plaintiff below, entered into a contract with Depew & Overfield, whereby the latter agreed to erect for the former a residence and certain outbuildings, furnish all labor and material, and complete the contract within one hundred and twenty days, according to plans and specifications referred to and made a part of the contract.   The consideration agreed upon was $14,980, payable in installments as the work progressed. Contemporaneously with the execution of the building contract, the contractors, and the respondent as their surety, executed and delivered a bond in the sum of $15,000, conditioned "that if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law."   The bond also contained the provision "that in no event shall the surety be liable for a greater sum than the penalty of this bond, or subject to any suit, action, or other proceeding thereto that is instituted later than the 22d day of February, 1906."   The contractors became insolvent in January, 1906, and a receiver was appointed for them, who completed the buildings June 1 following.   Numerous liens were filed against the property of the appellant, the first being filed March 28 and the last August 2, 1906.   Actions were commenced in July, 1906, for the foreclosure of these liens, terminating in a judgment in this court on June 13, 1908 (*Jensen v. Sheard*, 49 Wash. 593, 96 Pac. 2), the remittitur being filed in the lower court July 14, 1908.   This suit was commenced August 6, following.   In the lien foreclosures cer-

tain liens were established against the appellant's property by the decree of the trial court, and the appeal was dismissed in this court.

This case was tried to a jury, which returned a verdict for the appellant for $3,234.35. The items making up the verdict were as follows: J. L. Todd, $573.65; St. Paul & Tacoma Lumber Co., $291.97; Savage-Scofield Company, $191.73; Washington Hardware Company, $212.42; interest, $48,67; demurrage for 190 days at $10 per day, $1,900; attorney's fees in lien case, $1,000; court expenses in lien cases, $1,494.93; total, $5,714.35; from which they deducted the amount unpaid on the contract and in the hands of the appellant, $2,480, leaving a balance as stated in the general verdict. Thereupon, on motion of the respondent, a new trial was granted. This appeal is prosecuted from the order granting a new trial.

The first and principal contention of the respondent is that the action is barred by the limitation period fixed in the bond. We have quoted the provision of the bond, to the effect that the respondent shall not be subject to any suit that is instituted later than the 22d day of February, 1906, and have stated that this action was commenced in August, 1908. The contract provided that the buildings should be completed and delivered within one hundred and twenty days from July 22, 1905, and, as we have seen, the contractors became insolvent in January, 1906, and the contract was completed by their receiver June 1 following. The liens were filed after the time fixed in the bond for commencing suit.

The authorities generally agree that it is competent for the parties to an indemnity bond to fix a period of limitation different from that provided by statute, and we think the better rule is that the limitation, if reasonable—and there is no reasonable excuse for delay in the commencement of the action—is binding upon the parties. One of the terms of the bond is that the obligors "shall well and truly indemnify and save harmless the said obligee from any pecuniary loss re-

sulting from the breach of any of the terms, covenants, and conditions" of the bond. There are three elements to this stipulation: (1) there must be a breach of the contract before there is a liability, (2) that the indemnitors will protect the indemnitee against all breaches, and (3) the protection guaranteed is against any pecuniary loss resulting from a breach of the contract. Stated in another form, there must have been a breach of the contract and a pecuniary loss suffered therefrom before the right of action accrued. To determine whether the limitation upon the commencement of the action is reasonable, the bond, the contract, and the facts of the particular case must be considered together. The first breach of the contract occurred when the contractors failed to complete the building within the time agreed upon. This was a technical one, and there was no remedy upon the bond as no pecuniary loss had then occurred. The contractors not only undertook to complete the building within one hundred and twenty days, but also to furnish the necessary material and labor with which to complete it. We have seen that the liens were not filed until after the bar became complete under the bond, if that condition be literally enforced. The actual substantial breach did not occur until the liens became an established charge against the appellant's property. As was said in *Ovington v. Aetna Indemnity Co.*, 36 Wash. 473, 78 Pac. 1021, the contract contemplates that the contractors shall furnish the labor and material, and the bond is not breached every time the contractor buys an article or employs a person to perform labor upon the building without paying for the particular article or service in advance, but the actual breach occurs when liens are filed and established by the judgment of a court of competent jurisdiction, on account of the failure of the contractor to perform his engagement. The same view is announced in *Beebe v. Redward*, 35 Wash. 615, 77 Pac. 1052. The view that the limitation is not controlling unless it is reasonable, or where there is a

reasonable excuse for delaying the suit beyond the time agreed upon, is· supported by the following authorities: Wood, Limitations, § 42; Stearns, Law of Suretyship, § 258; *Longhurst v. Star Ins. Co.*, 19 Iowa 364; *Gulf C. & S. F. R. Co. v. Gatewood*, 79 Texas 89, 14 S. W. 913, 10 L. R. A. 419.

"But such condition will not be enforced where the delay is unavoidable." Stearns, Law of Suretyship, § 258.

And it will not be enforced where a reasonable excuse for the delay is shown. *Gulf C. & S. F. R. Co. v. Gatewood, supra.* What we deem the correct rule of construction, as ap-. plied to the facts in the case, is aptly stated in the *Longhurst* case, where the court, considering a similar limitation touching the insurance of a mechanics' lien, said:

"The defendant, in granting a policy upon a mechanic's lien, admits that it is an insurable interest. And so this court held in the case of *Carter v. The Humbolt Fire Insurance Company*, 12 Iowa 287. If, then, the company consents to grant a policy upon such an interest, they do so subject to the unavoidable delay in the judicial ascertainment of the value of that interest if a loss should occur. If, with reasonable diligence, the value cannot be legally ascertained in time to bring an action on the policy within a year from the date of the loss, then it follows (unless you wish to impute a dishonest purpose on the part of the company), that in granting such policy they intended to waive, in this class of insurable interest, the condition which limits the right of action on the policy to twelve months. By putting this construction upon the contract of insurance, you preserve the upright intent of the company intact. Whereas if you put the other construction upon it, you, by implication, charge, or perhaps it would be better to say, judicially determine, that the company granted a policy for a valuable consideration paid, which at the time, they had reason to believe, would be no risk to them and no protection to the insured, and thereby obtained money for themselves under false pretenses. True charity thinkest no evil. It is therefore right for us to presume, that it was the honest intent of the company, to insure the plaintiff's mechanic's lien upon the premises specified, against loss by fire, and upon the other hand, that it was

the expectation of the insured, in paying the required premium, that his policy would cover the loss and give him the requisite protection. It is the business of the court in construing the contract, to give effect, if possible, to the real intent and expectations of the parties. That can be done only in this case, by holding that the fifteenth condition of the policy under discussion, is not applicable to this particular class of insurable interest, and that when the defendant consented to take risks of this kind, it either intended to waive the limitation, or have it to commence running from the date that the value of the mechanic's lien should be judicially ascertained."

*Lesher v. United States Fidelity & Guaranty Co.*, 239 Ill. 502, 88 N. E. 208, cited by the respondent, held a similar limitation a bar to an action commenced after the limitation period had expired; under a statute, however, which permitted the obligee, at any time after judgment, to sue out a writ of recovery to assess damages for a breach of any covenant contained in the bond subsequent to the former trial. Our attention has not been called to any such statute in this state, and we have not been able to find a similar one. *Hart v. Citizens' Ins. Co.*, 86 Wis. 77, 56 N. W. 332, 39 Am. St. 877, 21 L. R. A. 743, also cited by the respondent, held the limitation period contained in the contract controlling in a fire insurance policy. In such case the fire definitely fixed the liability. It would be unjust and unreasonable in this case to say that the contract should be so interpreted as to require the appellant to commence his action months before his pecuniary loss resulting from a breach of the contract was capable of ascertainment. He could not know the extent of his loss until after the building was completed. The policy of the law is opposed to the splitting of causes of action. The end sought to be accomplished by the bond was to secure the completion of the contract, within the time and in the manner fixed by the contract, or its legal equivalent, compensation in damages to the extent of the pecuniary loss. The bond does not oblige the obligors to pay legal liabilities, but to indemnify the appellant for any pecuniary loss he may sustain from

a breach of the contract; and in view of this provision, we agree with the appellant that it is an indemnity against liability for damages, and the cause of action did not accrue until the damages were judicially determined and actually paid.

"The difference between a contract of indemnity and one to pay legal liabilities is that upon the former an action cannot be brought, and a recovery had, until the liability is discharged." *American Employers' Liability Ins. Co. v. Fordyce*, 62 Ark. 562, 36 S. W. 1051.

See, also, *Fenton v. Fidelity & Casualty Co.*, 36 Ore. 283, 56 Pac. 1096, 48 L. R. A. 770; 16 Am. & Eng. Ency. Law (2d ed.), 178. The view we have expressed leads to the conclusion that the limitation in the bond is unreasonable, and that the delay in the commencement of the action was excusable.

Passing to a consideration of the item of $1,000, allowed by the jury as attorney's fees in the lien case, the record shows that only $250 of this amount has been paid. Having construed the bond as one of indemnity against damages, the recovery on this item is limited to $250, the sum paid before the commencement of the suit.

The contract provided that the appellant could deduct as liquidated damages the sum of $10 per day for each day of default in completing the contract. The court instructed the jury that this item could not be recovered for the time, if any, that the delay was caused by the appellant. Where the sum stipulated as damages is reasonable, and the determination of the actual damages difficult or impossible of ascertainment, the sum agreed upon will be treated as liquidated damages. *Reichenbach v. Sage*, 13 Wash. 364, 43 Pac. 354, 52 Am. St. 51. The contract authorized a deduction of the stipulated damages, and the appellant was not required to apply any part of such sum to the satisfaction of obligations incurred by the contractor. The bond provided that in case of default the respondent could assume and complete the contract. It had notice of the default and failed to exer-

cise its option, and it is not in a position to complain of the demurrage.

In the lien case, the court found that certain claims for labor and material were for extra work not embraced in the contract, and the court instructed in this case that there could be no recovery for such items. The instruction was correct. The appellant contends, however, that the findings were not within the issues of the former case, and that it is not concluded by them. He was a party to the lien foreclosure suit, and in the absence of the record in that case, we must presume that the findings were within the issues and the evidence.

The jury allowed $1,495.93 for court expenses in the former suit. This includes certain items which were not taxed as costs. Appellant cannot recover any item as costs incurred in the former case that was not taxed or legally taxable as such. Nor can he recover for costs paid in resisting the claim established against him for extra work, but he can only recover such ratio of the costs as the sum found to be within the contract bears to the entire amount established in that suit. Other suggestions made by the respondent have been considered, but do not require separate discussion. There is no legal objection to the other items found in the special verdict. The view we have taken makes the respondent's liability a matter of mathematical computation under the verdict.

The judgment will be reversed, with directions to the lower court to enter a judgment for the appellant for all the items contained in the verdict, excepting the attorney's fees which will be allowed to the extent of $250. The court expenses will be allowed in conformity with this opinion. Neither party will recover costs of appeal.

RUDKIN, C. J., FULLERTON, and CHADWICK, JJ., concur.

### ON PETITION FOR REHEARING.
[Decided June 18, 1910.]

PER CURIAM.—In a petition for a rehearing, the appellant states that he has not been able to agree with the respondent

as to what costs are taxable, or the amount of costs to be allowed and deducted from the verdict under the opinion of this court, and asks this court to determine that question. We are unable upon the record to ascertain the amount of the taxable costs.    This question should be submitted to and determined by the trial court in accordance with our former opinion.