Argued July 16, decided July 29, rehearing denied September 23, 1913.

# LEITER *v.* DWYER PLUMBING CO.

(133 Pac. 1180.)

**Contracts—Performance—Decision of Architect.**

1. Where a contract for the construction of a government building provided that the supervising architect could suspend the work whenever, in his opinion, it was necessary or advantageous, and that the government could make such changes as it desired, the right of the architect to suspend the work is not subject to review by the court except in case of fraud, gross mistake, or negligence amounting to bad faith.

**Evidence—Best and Secondary Evidence—Facts Evidenced by Writing.**

2. Where the contract did not require the opinion of the architect suspending the work to be in writing, oral evidence that he suspended the work was admissible in an action by the contractor against a subcontractor and his surety who claimed that the delay was a breach of the subcontract, even though there were letters which might have been produced which would have shown his authority for ordering the suspension.

**Principal and Surety—Discharge of Surety—Provisions of Building Contract—Suspension of Work.**

3. Where a subcontract for work upon a federal building provided that the work should be done when called for by the general contractor and continued so as not to delay the other work, and expressly stated that the terms of the original contract were made a part of the subcontract, a suspension of the work by the architect for one year under authority conferred upon him by the original contract did not discharge the surety of the subcontractor, even though there was an advance in the price of material during the time the work was suspended.

**Principal and Surety—Discharge of Surety—Breach of Assured Contract.**

4. In order for a surety company to be relieved of liability, it must appear that the breach of the contract assured, which it claims discharges its liability, is a substantial one working pecuniary disadvantage to the surety or depriving it of some protection or privilege reserved in the bond.

**Principal and Surety—Discharge of Surety—Provisions in Building Contract.**

5. Where the supervising architect of a building, under the authority conferred upon him by the general contract, suspended work for more than one year and made several changes in the plans which caused additional delay, it could not be said as a matter of law that

the suspension of the work and the delay were so unreasonable as to relieve the surety of a subcontractor from liability.

**Pleading—Replication—Departure—Contract.**

6.  Where the complaint in an action against the surety of a subcontractor set out the original contract in general terms, and the surety denied liability because of delay in calling for the work, a replication which stated in detail the provisions of the original contract permitting the suspension of the work by the architect was not a departure from the cause of action stated in the complaint.

**Pleading—Replication—Departure.**

7.  A plaintiff cannot set up one cause of action in his complaint and recover upon another and different ground alleged in his replication.

**Contracts—Construction by Parties—Special Acts.**

8.  Where the work on a building was suspended by the order of the architect by authority given him by the general contract, and the subcontractors, after the time originally provided for the completion of the work, inquired when they could proceed, and some time thereafter informed the principal contractor that they could not carry out their contract because of financial embarrassment, such conduct is a construction of the subcontract by the parties that the terms of the original contract as to suspension of the work were incorporated therein.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This is an action by R. A. Leiter, as administrator of the estate of E. J. Duhamel, and John Megrath, co-partners doing business as Megrath & Duhamel, against the Dwyer Plumbing & Heating Company, a corporation, and Pacific Surety Company of California, a corporation, to recover $3,000 from the Pacific Surety Company of California upon a bond executed by Dwyer Plumbing & Heating Company, as principal, and Pacific Surety Company of California, as surety, to the plaintiffs for the purpose of insuring the faithful performance of one of the subcontracts for the construction of a federal building at Seattle, Washington. The cause was tried by the court without a jury, and findings of fact were made in favor of the plain-

tiffs. From a judgment thereon, the defendant Pacific
Surety Company appeals.

It appears from the record that on the 13th day
of October, 1903, the United States entered into a con-
tract with Megrath & Duhamel, as general contractors,
for the construction of a public building in the City of
Seattle, Washington, to be used as a United States
courthouse, custom-house, and postoffice, for the sum
of $605,000. This written contract required the gen-
eral contractors to furnish all labor and materials and
perform all the work required in the construction of
the building (with certain minor exceptions) in ac-
cordance with the plans and specifications which were
attached to and made a part of the contract. It also
provided that the contractors should carry on the work
in the time and manner required by and under the
supervision of the supervising architect of the United
States Treasury Department, or his representative;
that the building should be completed on or before the
1st day of February, 1906, time being expressly made
the essence of the contract. The United States was
given the right to suspend the work whenever "in the
opinion of the supervising architect it might be neces-
sary for the purposes or advantage of the work," and,
upon such suspensions being made, the contractors
were to be entitled to additional time equal to that of
the suspensions. Included in the plans and specifica-
tions of the general contract was certain plumbing and
gas-piping work required to be done upon the building
which the plaintiffs, the general contractors, sublet
to the defendant Dwyer Plumbing & Heating Com-
pany by a contract entered into on the 31st day of
October, 1904. By the terms of the latter contract the
Dwyer Plumbing & Heating Company agreed to fur-
nish all labor and materials and install the plumbing
and gas-piping in the building in accordance with the

plans and specifications thereof. It agreed to complete all underground work within 60 days from the date of the contract, to start other work upon notice from the general contractors, and continue the same to completion so as not to cause any delay in the progress of other work on the building. It was expressly provided in this subcontract as follows: "It is hereby understood and agreed that said Megrath & Duhamel, parties of the second part, have contracted with the United States as general contractors for the within mentioned building, and that the terms of the original contract, plans, and specifications are hereby declared part and parcel of this contract in so far as they apply to the work herein contemplated."

The bond upon which this action is based was given to secure the performance of this subcontract and obligated the parties thereto to perform the same fully and faithfully within the time and according to the terms therein prescribed. A breach of the contract contained in the bond, on the part of the defendants, is predicated upon failure of the plumbing company to perform the work. There is no dispute upon the point of fact that the Dwyer Plumbing & Heating Company completed the underground work as agreed and received payment therefor in accordance with the terms of the subcontract. Nor is it disputed that the plumbing company did not do any other work under such subcontract.

The defense was pleaded in the answer of the defendant Pacific Surety Company that the plaintiffs never called upon the plumbing company to complete the rest of the work at any date which would have enabled it to do so on or before the 1st day of February, 1906; that on January 15, 1907, the plaintiffs gave notice to the Dwyer Plumbing & Heating Company to complete the work.

By their reply the plaintiffs emphasized that provision of the general contract which permitted the United States to suspend the work whenever "in the opinion of the supervising architect, it might be necessary for the purposes or advantage of the work," and allow an extension of time equal to any delays caused by such suspensions.                                    AFFIRMED.

For appellant, Pacific Surety Co., there was a brief over the names of *Mr. Thomas H. Crawford, Mr. Schuyler C. Spencer,* and *Holman & Hampton,* with oral arguments by *Mr. Crawford* and *Mr. Spencer.*

For respondents there was a brief over the names of *Griffith, Leiter & Allen* and *Abel & Burnett,* with an oral argument by *Mr. Rufus A. Leiter.*

MR. JUSTICE BEAN delivered the opinion of the court.

The theory of the defendant, as pleaded in its answer, was that the 1st day of February, 1906, was made the date for the completion of the work covered by the subcontract by reference being made therein to the general contract, and since the general contractors failed to prosecute the balance of the work to such an extent as to enable the subcontractor to perform its part of the work by the 1st of February, 1906, no obligation rested upon it to install the work thereafter. This construction of the contract contended for ignores the provision of the original contract whereby the government, acting by its supervising architect, was empowered to suspend any of the work, and, in the event that this was done, that the contractor should be allowed an additional time equal to that of the suspensions. The original contract also provided that the government could make any changes or additions in the work as it desired. We thus find that the general con-

tract in effect made provisions for the building to be completed by February 1, 1906, with the provisos that the supervising architect could suspend the whole or any part of the work whenever in his opinion it was necessary for the purposes or advantage of the work, and that the government could make such changes as it desired.   Such alterations might necessitate a delay in the completion of the building and would not release the surety: *De Mattos* v. *Jordan,* 15 Wash. 378 (46 Pac. 402); *Drumheller* v. *Amer. Surety Co. of N. Y.,* 30 Wash. 530 (71 Pac. 25); *Ovington* v. *Ætna Indemnity Co.,* 36 Wash. 473 (78 Pac. 1021).   The time of all suspensions and other delays caused by the United States was by the terms of the contract to be ascertained and allowed by the supervising architect.   The effect of the contract was to leave the matter of suspensions and other delays entirely with the government.

1. The plaintiffs introduced evidence tending to show that the United States suspended work on the building from October, 1904, to October, 1905, on account of the regrading of the street, and made about 40 changes in the plans and specifications of the building, causing delays.   Mr. Grant, who superintended the work under the direction of the supervising architect, testified that the work on the building was suspended by order of the United States; that the government caused a great many delays in the progress of the construction by the various changes in the plans made by authority of the supervising architect.   He states: "I instructed the contractors to suspend operations."   Suspension of the work by order of the supervising architect, whether upon an expressed or unexpressed opinion as to the necessity, could not, under the terms of the contract, be questioned by Megrath & Duhamel, except in case of gross error or

fraud in making the same: *Livesley* v. *Johnston,* 45 Or. 30 (76 Pac. 946, 106 Am. St. Rep. 647, 65 L. R. A. 783); *Kihlberg* v. *United States,* 97 U. S. 398, 403 (24 L. Ed. 1106).

By the execution of the subcontract and the bond, the defendants became bound by the terms of the original contract, which so far as applicable were made a part of the subcontract, thereby making the same supplemental and subordinate to the general contract. In the absence of pleading and proof of fraud, gross mistake or negligence amounting to bad faith, the judgment of the supervising architect upon the question of suspension is final and will not be subjected to the revisory power of the court: *United States* v. *Gleason,* 175 U. S. 588, 602 (44 L. Ed. 284, 20 Sup. Ct. Rep. 228); *Vanderhoof* v. *Shell,* 42 Or. 578 (72 Pac. 126).

2. The opinion of the supervising architect was not required by the terms of the contract to be in writing. When the superintendent notified Megrath & Duhamel to suspend the work, they were bound to obey. Plaintiffs showed by the testimony of the architect, who was recognized as representing the government, that the work was suspended at different times. The defendant surety company objected and excepted to oral evidence of this fact for the reason that the letters authorizing such suspensions, being in Seattle, Washington, were not produced and were the best evidence. The suspensions of the work and the length of time of such cessations were facts resting in parol, which in the nature of things were not capable of being evidenced by any writing. No official or other record of such matters of detail are usually made. The letters would show more particularly the authority of the architect for the suspensions. The terms or phrases of the letters were not in dispute. The authority of the architect giving directions to Megrath & Duhamel

arose incidentally or collaterally. There was no real dispute in regard to the work actually having been suspended by authority of the architect. There was no prejudicial error in admitting the oral evidence: Wigmore, Ev., § 1246; *Peay* v. *Salt Lake City,* 11 Utah, 331 (40 Pac. 206); *East* v. *Pace,* 57 Ala. 521. Under the stipulations of the contract and the evidence as to suspensions and changes in the work necessitating a longer time for the performance thereof, the fact that the suspensions were had and the changes actually made and acquiesced in by those interested in the erection of the building rendered the question of any written authority for the same of but little importance.

3. The defendant surety company insists that the suspension of the work by the United States for more than a year was unreasonable and without authority, under the terms of the contract, and amounted in effect to the making of a new contract, thereby discharging the surety from all liability upon the bond; that in the meantime prices advanced 25 per cent. We do not think such a construction of the contract is warranted. The subcontract, in which the original one was incorporated and made a part thereof, provided (except as to the underground work): "All other work to be started upon notice from the parties of the second part and continued to completion with a sufficient force of men so as not to cause any delay in the progress of any other work on the building." This provision as to time is very general, and it is only by a reference to the original contract that the time for performance can be more definitely ascertained. When Dwyer Plumbing & Heating Company made the contract with expectation of speculative profits, and the surety company for a compensation guaranteed the faithful performance thereof, the principal and surety should have

66 Or.—31

taken into consideration the possibility of gain or loss by increase or decrease in the price of materials. By their contract they clearly assumed the responsibility for any loss that might be sustained in this respect, and they should not be relieved of their obligation.

4. It is not shown that plaintiffs were guilty of a breach of the contract. In order for the surety company to escape responsibility, it should appear that such company has been prejudiced by a breach of the contract. The breach must not have been merely technical, but a substantial one, working a pecuniary disadvantage to the surety company, or depriving it of some protection or privilege reserved in the bond: *James Black Masonry etc. Co.* v. *National Surety Co.,* 61 Wash. 471, 475 (112 Pac. 517).

5. It cannot be said as a matter of law that under the agreement contained in the contract the delays occasioned by the suspensions of the work and changes in the architecture were unreasonable. They were clearly within the contemplation of the parties to the contract. The undertaking which the obligees assumed in part was an important one and provided for the construction of a $605,000 building. The reasons given for the cessations and delays were cogent. It appears that the regrading of the avenue was undertaken after the walls of the building had been built of granite to a certain height. This regrading necessitated the tearing down and rebuilding of part of these granite walls. By the terms of the original contract the United States reserved the right to change any of the materials specified, to construct the building entirely of granite, to make changes in the plans, and, in order to provide time for the consideration thereof, to order suspensions.

6. Counsel for the defendant surety company earnestly contend that the reply of the plaintiffs referring

to the general contract which permitted the United States to suspend the work was a clear departure from the cause of action set out in the complaint. This position is untenable. The complaint alleges in general terms the making of the new contract between the plaintiffs and the United States on the 13th day of October, 1903, and described the same generally. There is attached to the complaint a copy of the subcontract, by the terms of which the original contract, plans and specifications were declared to be part and parcel thereof so far as applicable to the work. The complaint alleged that the Dwyer Plumbing & Heating Company failed and refused in all respects to perform the contract except as to the underground plumbing. If the complaint was not as specific in detailing the provisions of the original contract as the defendant surety company desired, its remedy would have been by motion to make the same more definite. The reply simply sets forth a portion of the details of the original contract referred to in the complaint. It does not set up new matter constituting another cause of action, or matter inconsistent with the allegations of the complaint: *Childs Lumber & Mfg. Co.* v. *Page,* 28 Wash. 128 (68 Pac. 373).

7. It is a well-settled rule of law in this state that the plaintiff must prevail, if at all, upon the matters alleged in his complaint, and that he cannot set up one cause of action in the complaint and recover upon another and different ground of relief alleged in his reply. We do not think there was any infringement of this rule in the case under consideration.

8. The real controversy between the plaintiffs and the surety company is in regard to the construction of the contract. It appears that the parties acquiesced in the construction of the contract as contended for by the plaintiffs, as on the 12th day of February, 1906,

12 days after the time alleged by the defendant as the·
date when the work should have been completed under·
the contract, the Dwyer Plumbing & Heating Company
wrote to Megrath & Duhamel to ascertain when they
would be ready for the plumbing work to proceed.
They were informed that it would be late in the fall
of that year. After apparently acquiescing therein,
they wrote to Megrath & Duhamel on the 15th of Octo-
ber, 1906, that they would be unable to carry out the
contract on account of financial embarrassments. The
original contract was performed by the plaintiffs ac-
cording to its terms, to the satisfaction of the govern-
ment and the Dwyer Plumbing & Heating Company,
and it was apparently satisfactory to the surety com-
pany.

The judgment of the lower court should be affirmed,
and it is so ordered.        Affirmed.

Mr. Chief Justice McBride, Mr. Justice Eakin
and Mr. Justice McNary concur.