Argued February 7, affirmed April 16, objections to cost bill sustained in part May 28, 1929.

# CONDIT & CONSER, INC., *v.* MOON MOTOR CAR COMPANY.

(276 Pac. 265.)

162

For appellant there was a brief over the names of *Messrs. McCamant & Thompson* and *Mr. Ralph King*, with an oral argument by *Mr. Edward J. Clark*.

For respondent there was a brief and oral argument by *Mr. Leslie E. Crouch*.

ROSSMAN, J.—The defendant is a manufacturer of automobiles; the plaintiff was its local distributor; the agreement between the two was evidenced by a written contract. The parts of this document which are material to the dispute before us provided that the plaintiff should purchase from the defendant 500 motor-cars accepting "a minimum of ten models per month"; that it should pay the list price, less a distributor's discount upon shipment and presentation of sight draft attached to bill of lading; that it should deposit with the defendant $500 "to be retained * * until the terms of this contract had been complied with. This deposit * * is to insure the party of the first part that all charges will be paid on cars shipped under this contract." Further the contract provided, "either party may at its option with or without cause, at any time, cancel this contract by mailing to the other a written notice of its intention so to do. * * "; that "no letter, telegram or communication passing between the parties hereto covering any matter during this contract period, or any plans for periods thereafter shall be deemed a part of this agreement * * ; nor shall it have the effect of modifying or adding to this agreement unless it is distinctly

stated in such letter, telegram or communication that the same is to constitute a part of this agreement and is to be attached as a rider to this agreement and is signed by the parties thereto.'' The agreement provided that the plaintiff should ''judiciously advertise Moon cars.''

■ The difficulty between the parties, which resulted in this piece of litigation, had its inception January 30, 1926, when the plaintiff sent to the defendant a telegram stating that it was impossible for the former to continue in business on the 30 per cent discount rate allowed by the defendant; it asked for a revision to 33⅓ per cent and also for ''an advertising allowance of not less than $40 per automobile.'' The exchange of telegrams which followed clarified the situation somewhat; the defendant expressed itself as willing to try the plaintiff's advertising proposition for three months and as agreeable to a discount rate of 33⅓ per cent. Further the defendant's telegram revealed the confidential information that it was contemplating the manufacture of an additional model which would be ready for the market in the month of July; it stated clearly that it was unwilling to commit itself as to price and discount rate on this new product. Such being the developments the plaintiff, February 4th, sent a telegram to the defendant, the material portions of which are: ''three months not sufficient trial for proposed advertising arrangement. If our present discount of thirty three and one third per cent is to continue for year nineteen twenty six and if you will accept the proposed advertising arrangement as outlined in our night letter of February third to continue until July first that is for six months we are ready to do immediate business. * * '' This telegram brought a reply from

the defendant on February 5th, the material portion of which is: "Your telegram fourth satisfactory so far as present models are concerned" and excepted the contemplated new car from the proposed arrangement. The defendant contends that this exchange of communications failed to bring the minds of the parties to a meeting and thus failed to effect a contract. The following is its reason: both of the defendant's answers to the plaintiff's telegrams excepted the contemplated new model.

■ It seems desirable to state, that the plaintiff was entirely ignorant of this new product until the defendant mentioned it, and when the defendant's first telegram excepted it from the negotiations, the plaintiff made no mention of it in its subsequent proposal, thereby in effect acquiescing in the suggestion that the negotiation should not include the new product.

■ The above series of exchanges, six in number, passed between the plaintiff and Mr. Stewart McDonald, president of the defendant; the latter's telegram of February 5th brought this series to a conclusion. Shortly thereafter a new series of communications began, in the name of the defendant on the one side and the plaintiff on the other. This consisted of many letters and several telegrams; the letters inclosed credit memoranda, statements of account, and copies of advertisements inserted in the Portland newspapers of Moon automobiles. A further idea of the contents of these communications may be gained from the following brief synopsis: one of the letters calls plaintiff's attention to the fact that it omitted to make the advertising charge of $40 upon one automobile; several other communications concerned a variance of $100 in the advertising account; a tele-

gram urges prompt payment to the plaintiff of $702.61 as the defendant's share of the advertising expense to date; another telegram sent by Mr. McDonald promised defendant would promptly attend to this matter. The other communications are of like kind. They would seem to readily justify the inference that the advertising arrangement mentioned in the first series of communications was in full operation. But the defendant argues that this second series of communications is not necessarily referable to the negotiations embraced within the first series, and that it may have concerned itself with some other agreement. This contention lacks merit for the following reasons: during the course of the trial the plaintiff offered in evidence its duplicate original of the contract previously mentioned; it is clear that when the offer was made the plaintiff had in mind that the document offered represented the entire agreement between the parties, except so far as it had been modified by the advertising agreement previously mentioned. The defendant made no objection to the offer of the contract, but on the other hand readily acquiesced in its reception in evidence. We have previously quoted a clause of the contract which provided that no communication passing between the parties, pertaining to any matter mentioned in the contract, should have the effect of modifying it unless attached to the agreement as a rider; the contract expressly mentioned advertising. Hence, it would seem that the defendant's present suggestion that there possibly existed some other agreement in regard to advertising is out of harmony with the position it assumed at the time of the trial when the contract was offered and received in evidence as a true repository of the agreement between the parties.

And it now becomes clear that the second series of correspondence concerned the proposed advertising arrangement, and establishes that the parties put it into immediate operation following the defendant's telegram of February 5th. We conclude that the parties effected the advertising agreement mentioned in the complaint. Our reasons are: (1) the interchange of telegrams is reasonably susceptible of the construction that the plaintiff's telegram of February 4th acquiesced in the plaintiff's suggestion that the new model be excluded from the negotiations; (2) if the exchange of telegrams fell short of producing a meeting of the minds, the subsequent acts of the parties, which immediately followed and which put into operation the advertising arrangement, completed the process and concluded a contract in fulfillment of the prior negotiations. Assent may be indicated by acts as well as by words: Williston on Contracts, § 90.

■ It will be observed from the portions of the contract previously quoted, that it permitted either party to cancel the contract at will by sending notice of intention so to do to the other party. The plaintiff sent such a communication to the defendant August 7, 1926, and having done so contends that it is entitled to some items of recovery which would not be available if it was bound to continue with the contract for the entire year. The defendant contends that if the exchange of the telegrams, previously mentioned, effected a contract, the plaintiff thereby bound itself to continue as distributor for all of the year 1926; particularly it calls attention to the following language found in plaintiff's telegram of February 4th: ''If our present discount of thirty three and one third per cent is to continue for the year 1926 and if you will accept the proposed advertising arrangement

as outlined * * we are ready to do immediate business.'' The defendant contends that the promises were dependent, and that the refusal of the plaintiff to continue to sell the defendant's products constitutes a defense to the plaintiff's claims. It may be that the contract is susceptible to the construction suggested by the defendant. But it is easily possible to find satisfactory reasons for an opposite conclusion; for instance, the defendant demanded that it should be left free to fix the discount rate upon the new model which would appear in July, yet the contract covered all models produced by it. It would seem unlikely that the plaintiff would bind itself to remain as distributor for 1926 under such circumstances; not knowing the price or discount rate upon the new model; in fact Mr. McDonald's telegram indicated that the new car might appear under a new name. There being room for construction, a guide, which is safer than the ambiguous words of the parties, is their mutual construction of their agreement when the occasion for cancellation presented itself. The following circumstances afford clear evidence of their construction of these parts of the agreement, as we have previously mentioned the defendant August 7th notified the defendant by telegram of its election to cancel the contract; this telegram was followed by a confirmatory letter August 9th. On the latter day Mr. McDonald, president of the defendant, in a letter acknowledged receipt of the telegram, and referring to the confirmatory letter stated: ''Upon receipt of this notice we will accept said cancellation''; the letter argued earnestly with the plaintiff to retain its franchise. August 17th another letter was sent to the plaintiff by the same individual which likewise clearly indicated that the defendant was acquiescing in the

plaintiff's action; it also argued that the plaintiff should remain as distributor. Thereafter there passed some communications in regard to the disposition of the stock of automobiles and parts which were in the plaintiff's possession. In all of the defendant's communications concerning this matter it at no time protested that the plaintiff's action was without authority, but continuously acquiesced in the cancellation of the contract. Apparently it never assumed any other attitude until it filed its answer in this action. At the trial it offered no explanation of the foregoing communications which acquiesce in the plaintiff's cancellation. The construction placed upon a document by the parties is generally a safe guide to follow: 6 R. C. L., Contracts, § 241; *Leiter* v. *Dwyer Plumbing Co.*, 66 Or. 474 (133 Pac. 1180). For these reasons we conclude that the parties construed their telegrams as not impairing the language of the contract which afforded to both a right to cancel the contract at will.

The foregoing disposes of the principal assignments of error argued by the appellant. The above renders unnecessary a disposition of at least one of the assignments of error; we have carefully considered all of the rest and find that they are without merit. It follows that the judgment of the Circuit Court should be affirmed.

AFFIRMED. OBJECTIONS TO COST BILL SUSTAINED IN PART.

COSHOW, C. J., and McBRIDE and RAND, JJ., concur.