234 P.3d 279 (2010)
John H. KIM, Min H. Kim and Eugene H. Kim, Appellants,
v.
Frank C. MOFFETT and "Jane Doe" Moffett, husband and wife, and T.A.A., Incorporated, Respondents.
No. 38426-4-II.
Court of Appeals of Washington, Division 2.
June 29, 2010.
*281 Douglas Duane Sulkosky, Attorney at Law, Tacoma, WA, for Appellants.
Paul H. Meyer, Attorney at Law, Olympia, WA, for Respondents.
QUINN-BRINTNALL, J.
¶ 1 Chul Mo Kim contracted with an Olympia architect for professional services to facilitate the development of California properties that were owned at different times by Kim, and then his sons, in various partnerships. When Kim, and then the sons, sued the architect, alleging breach of contract, the trial court dismissed the claims, ruling that the plaintiffs were not real parties in interest and that an undisclosed principal may not enforce a personal services contract. Only the Kim children appeal. At issue on appeal is the propriety of those dismissals. We hold that as a party to a contract for personal architectural services, only Kim has a right to enforce that contract and we affirm the trial court's orders dismissing the Kim children's claims.

FACTS

Chain of Title/Chronology of Events
¶ 2 On December 28, 1987, Kim and his wife, Sun Hae Kim, purchased property located in Orinda, California, that later became known as 2 Alice Court and 7 Alice Court. On December 28, 1989, and December 15, 1992, Kim and his wife transferred the parcels to trusts for their three sons, John H. Kim, Min H. Kim, and Eugene H. Kim (hereafter the Kim Children).
¶ 3 On June 10, 1999, Kim formed the Strykowski Limited Partnership (a California limited partnership), listing Kim's Olympia address as the partnership's address and Kim's California attorney as the registered agent. The partnership consisted of Kim as the general partner and the Kim Children as the limited partners. On August 13, 1999, the above noted trusts transferred the real property in question to the Strykowski Limited Partnership.
¶ 4 On April 28, 2001, Kim and Frank Moffett, an Olympia architect licensed in California, entered into an initial agreement authorizing Moffett to gather information "preliminary to a formal agreement" as necessary for preparing construction designs for a residence on each of the two California properties. Clerk's Papers (CP) at 121.
¶ 5 On September 7, 2001, Kim, as general partner in the Strykowski Limited Partnership, signed a grant deed transferring the California property to the Kim Children, who were then adults. The deed was recorded in the California Contra Costa County Recorder's Office on October 1, 2001.
¶ 6 Meanwhile, based on another architect's work, Kim obtained initial design review approval from the Orinda Planning Commission on August 28, 2001 and October 9, 2001, regarding 7 Alice Court and 2 Alice Court, respectively.[1]
¶ 7 On October 19, 2001, Kim and Moffett formally contracted for Moffett's architectural services regarding the two California parcels. On the same day, Kim and Moffett signed Moffett's proposal letter for the project and signed the noted contract. The contract contained an integration clause stating, "This constitutes our entire agreement, and any provisions not included herein are specifically excluded." CP at 136. The contract is in the format of a letter written from Kim to Moffett on Kim's letterhead authorizing Moffett to perform listed architectural services regarding the Alice Court properties or as modified and authorized by Kim. The contract provides that "[t]his authorization *282 may be withdrawn by me [Kim], or resigned by you [Moffett], for cause upon written notice." CP at 136. Kim signed Moffett's October 19 proposal letter, the October 19 contract, and the earlier April 28 preliminary agreement as "owner" of the California properties.
¶ 8 After October 19, 2001, Moffett performed design work for which Kim paid $9,500. Around early February 2002, Moffett informed Kim that he was moving to California, would no longer be working on the project, and referred Kim to another architect in Olympia, R. Chandler Sogge. Purportedly, Sogge was not licensed in California, the work that Sogge and his associates performed was not acceptable to the planning commission, delays resulted in permits expiring before completion and approval of the required designs, and Kim had to start over with the development permitting and approval process.
¶ 9 On December 30, 2002, the Kim Children signed a grant deed transferring title to the California properties to JME Limited Partnership. JME was subsequently formed as a Washington limited partnership on January 7, 2003. The Kim Children's grant deed (signed on December 30, 2002) was subsequently recorded in the California Contra Costa County Recorder's Office on April 17, 2003.

Procedural Background
¶ 10 On May 18, 2006, Kim filed a complaint alleging that Moffett breached the October 19, 2001 contract for architectural services. On May 25, 2007, Kim filed an amended complaint that added JME as a plaintiff and stated that Kim was acting as JME's agent when he contracted with Moffett in October of 2001.
¶ 11 On December 14, 2007, Moffett filed a motion for an order of dismissal, judgment on the pleadings, and summary judgment seeking dismissal of all claims by Kim and JME. On May 23, 2008, the trial court granted Moffett's motion to dismiss Kim's claim on the grounds that Kim was not a real party in interest and also granted Moffett's motion for an order on summary judgment dismissing JME's claim.[2]
¶ 12 On June 2, 2008, Kim and JME filed a motion for reconsideration. The trial court denied the motion for reconsideration in a June 11, 2008 letter opinion and by written order filed on September 12, 2008.
¶ 13 The Kim Children filed a second amended complaint on February 12, 2008. The second amended complaint identified the plaintiffs as John H. Kim, Min H. Kim, and Eugene H. Kim, and stated that Chul Kim, acting as agent for the plaintiffs, contracted with Moffett, who breached the contract thereby damaging the plaintiffs.
¶ 14 On June 20, 2008, Moffett filed a motion for summary judgment regarding the second amended complaint by the Kim Children. On September 12, 2008, the trial court granted the motion. The trial court ruled that the Kim Children were undisclosed principals on a personal services contract between Moffett and Kim, who was acting as an agent for the Kim Children.[3]
¶ 15 The Kim Children now appeal the trial court's September 12, 2008 orders denying Kim and JME's motion for reconsideration and granting Moffett's motion for summary judgment dismissing the second amended complaint.

ANALYSIS

Standard of Review
¶ 16 We review an order granting summary judgment de novo and engage in the same inquiry as the trial court. Weden v. San Juan County, 135 Wash.2d 678, 689, 958 P.2d 273 (1998). Summary judgment is proper "if the pleadings, depositions, answers *283 to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one upon which the outcome of the litigation depends. Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 279, 937 P.2d 1082 (1997). Summary judgment is proper when reasonable minds could reach but one conclusion regarding the material facts. Greater Harbor 2000, 132 Wash.2d at 279, 937 P.2d 1082.
¶ 17 By contrast, we review a trial court's denial of a motion for reconsideration for abuse of discretion. Davies v. Holy Family Hosp., 144 Wash.App. 483, 497, 183 P.3d 283 (2008). A trial court abuses its discretion only if its decision is manifestly unreasonable or rests upon untenable grounds or reasons. Davies, 144 Wash.App. at 497, 183 P.3d 283. An abuse of discretion exists only if no reasonable person would have taken the view adopted by the trial court. Davies, 144 Wash.App. at 497, 183 P.3d 283.
¶ 18 To the extent we are required to interpret contract provisions, we apply the noted de novo review standard.[4] While interpretation of a contractual provision is often an issue of fact,[5] construction[6] is always a question of law, In re Marriage of Burke, 96 Wash.App. 474, 476, 980 P.2d 265 (1999), and, thus, amenable to summary judgment.

Dismissal of Kim's and JME's Breach of Contract Claims

A. Kim's Dismissal
¶ 19 Appellants, the Kim Children, first contend that the trial court "abused it's [sic] discretion" in dismissing Kim's breach of contract claim.[7] Br. of Appellant at 11. They argue that Kim was a real party in interest in several ways.
¶ 20 "CR 17(a) demands: `Every action shall be prosecuted in the name of the real party in interest.'"[8]Goodwin v. Bacon, 127 Wash.2d 50, 54, 896 P.2d 673 (1995). "[T]o enable one to maintain a cause of action to enforce private rights he must show that he has some real interest in the cause of action. `His interest must be a present, substantial interest, as distinguished from a mere expectancy, or future, contingent interest, and he must show that he will be benefited by the relief granted.'" State ex rel. Hays v. Wilson, 17 Wash.2d 670, 672, 137 P.2d 105 *284 (1943) (quoting 39 Am.Jur. 860); cf. Denman v. Richardson, 284 F. 592, 594 (1921) (applying former Rem. & Bal.Code § 179 (1910) (recodified as former RCW 4.08.010 (repealed 1985) and now found in CR 17), which required actions to be brought in the name of the real party in interest and holding that an agent cannot maintain an action on behalf of his principal in his own name).
¶ 21 The Kim Children contend that Kim lost management fees as the contractor for building the residences that he would have made had Moffett completed the contract and the designs been approved within the required time limit. But this is mere expectancy or future contingent interest and, thus, is insufficient to qualify Kim as a real party in interest. Hays, 17 Wash.2d at 672, 137 P.2d 105.
¶ 22 The Kim Children next argue that Kim was a third party beneficiary to the architectural services contract in that benefits would have flowed to him as the contractor managing the building of the residences had Moffett completed the design services. This argument also fails.
¶ 23 A third party beneficiary is one who, though not a party to the contract, will nevertheless receive direct benefits therefrom. McDonald Constr. Co. v. Murray, 5 Wash.App. 68, 70, 485 P.2d 626, review denied, 79 Wash.2d 1009, 1971 WL 39132 (1971). In determining whether or not a third party beneficiary status is created by a contract, the critical question is whether the benefits flow directly from the contract or whether they are merely incidental, indirect, or consequential. McDonald, 5 Wash.App. at 70, 485 P.2d 626. An incidental beneficiary acquires no right to recover damages for nonperformance of the contract. McDonald, 5 Wash.App. at 70, 485 P.2d 626. It is not sufficient that the performance of the promise may benefit a third person but that it must have been entered into for his benefit or at least such benefit must be the direct result of performance and so within the contemplation of the parties. McDonald, 5 Wash.App. at 70, 485 P.2d 626. "`The question whether a contract is made for the benefit of a third person is one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole construed in the light of the circumstances under which it was made.'" McDonald, 5 Wash.App. at 70, 485 P.2d 626 (quoting Grand Lodge of Scandinavian Fraternity of Am., Dist. No. 7 v. U.S. Fid. & Guar. Co., 2 Wash.2d 561, 569, 98 P.2d 971 (1940)). The requisite intent is not a desire or purpose to confer a benefit upon the third person nor a desire to advance his interests but "`an intent that the promisor shall assume a direct obligation to him.'" McDonald, 5 Wash.App. at 70-71, 485 P.2d 626 (quoting Am. Pipe & Constr. Co. v. Harbor Constr. Co., 51 Wash.2d 258, 266, 317 P.2d 521 (1957)).
¶ 24 Kim does not qualify as a third party beneficiary of the architectural services contract in at least two respects. First, he was a party to the contract. Second, his fees for managing construction of the residences would only be an indirect benefit of the contract. See McDonald, 5 Wash.App. at 70, 485 P.2d 626.
¶ 25 The Kim Children next argue that Kim was a real party in interest based on the contract rights he enjoyed as a promisee in the contract with Moffett. We agree with this alternative argument. A party to a contract is entitled to enforce it and to sue in his own name. Eastlake Constr. Co. v. Hess, 33 Wash.App. 378, 381, 655 P.2d 1160 (1982) (citing 17A C.J.S. Contracts § 518 (1963)), affirmed in part and remanded in part on other grounds, 102 Wash.2d 30, 686 P.2d 465 (1984). As a party to the architectural services contract, Kim had standing[9] to sue based on an alleged breach of that contract.
¶ 26 As a contracting party, Kim could bring a claim alleging breach of his contract with Moffett for architectural services.[10] *285 While it remains to be seen whether Kim can prove a breach,[11] the trial court erred in denying Kim that opportunity.

B. JME's dismissal
¶ 27 The Kim Children argue that, as the owner of the real property, JME is a third party beneficiary of the architectural services contract. But JME did not exist when the services contract was entered into on October 19, 2001. A third party beneficiary contract exists when the contracting parties, "at the time they enter into the contract, intend that the promisor will assume a direct obligation to the claimed beneficiary." Warner v. Design & Build Homes, Inc., 128 Wash.App. 34, 43, 114 P.3d 664 (2005) (citing Postlewait Constr., Inc. v. Great Am. Ins. Cos., 106 Wash.2d 96, 99, 720 P.2d 805 (1986)). As noted, the test of intent is an objective onewhether performance under the contract necessarily and directly benefits the third party. Warner, 128 Wash.App. at 43, 114 P.3d 664. An incidental, indirect, or inconsequential benefit to a third party is insufficient to demonstrate an intent to create a contract directly obligating the promisor to perform a duty to a third party. Warner, 128 Wash.App. at 43, 114 P.3d 664. "`[C]reation of a third-party beneficiary contract requires that the parties intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract.'" Burg v. Shannon & Wilson, Inc., 110 Wash.App. 798, 807-08, 43 P.3d 526 (2002) (alteration in original) (quoting Del Guzzi Constr. Co. v. Global Nw. Ltd., 105 Wash.2d 878, 886, 719 P.2d 120 (1986)). "This requires that the court, `not examine the minds of the parties, searching for evidence of their motives or desires. Rather, [it] must look to the terms of the contract to determine whether performance under the contract would necessarily and directly benefit the petitioners.'" Burg, 110 Wash.App. at 808, 43 P.3d 526 (alteration in original) (quoting Lonsdale v. Chesterfield, 99 Wash.2d 353, 362, 662 P.2d 385 (1983)). Here, there is no indication in the terms of the contract that the parties intended to benefit JME, an entity that did not exist when the contract was signed.
¶ 28 The Kim Children also contend that JME was the successor of Strykowski Limited Partnership and that Moffett knew or should have known that ownership of the property was held by a third party. This argument also fails. The Kim Children point to the planning commission minutes that Kim purportedly provided to Moffett before the contract for architectural services was signed. Although those minutes list the Strykowski Limited Partnership along with Kim as the "applicant/owner," Kim is clearly referred to in the minutes as the "owner" of the property. Moreover, Kim signed the contract as "owner" just below the integration clause, which by its terms and operation settled the matter of the parties' intent regarding Kim's status. M.A. Mortenson Co. v. Timberline Software Corp., 140 Wash.2d 568, 579-80, 998 P.2d 305 (2000) (presence of an integration clause strongly supports a conclusion that the written contract is the complete agreement between the parties).
¶ 29 As to the contention that JME is the successor to the Strykowski Limited Partnership, the salient point is that when the architectural services contract was signed on *286 October 19, 2001, the Kim Children held title to the parcelsnot Kim, not Strykowski, and not JME. Moreover, the Kim Children did not transfer title to JME until well after Moffett had given Kim notice that he was ending his services and had moved to California in February 2002. Under these circumstances, we hold that the trial court did not err in dismissing JME's breach of contract claims.
¶ 30 In sum, regarding the Kim Children's challenge to the trial court's September 12, 2008 order denying Kim and JME's motion for reconsideration, we hold that the trial court erred in dismissing Kim's breach of contract claims based on the threshold determination that he was not a real party in interest.[12] We further hold that, for the reasons discussed, the trial court did not err in dismissing JME's breach of contract claims.

Dismissal of the Kim Children's Second Amended Complaint
¶ 31 In granting Moffett's motion for summary judgment against the Kim Children, the trial court ruled that the contract at issue was for professional architectural services by Moffett and it was negotiated by Kim as the agent for the plaintiffs, the Kim Children. The court also ruled that a contract to render professional services is personal and nonassignable and that an undisclosed principal may not enforce a personal services contract. The court concluded that if the undisclosed principal cannot enforce the contract, the undisclosed principal cannot be damaged by the failure of the third party to the contract to act and, therefore, the undisclosed principal may not recover for such a failure to act. For the reasons discussed below, we agree.
¶ 32 In Dana v. Boren, 133 Wash.App. 307, 313, 135 P.3d 963 (2006), this court held that generally an undisclosed principal can sue to enforce a contract entered into by his agent. But Dana addressed a sale of goods, not a personal services contract. Dana relied on the rule from Columbia Security Co. v. Aetna Accident & Liability Co., 108 Wash. 116, 126-27, 183 P. 137 (1919), which stated,
"[I]t is a well established general rule that, where an agent on behalf of his principal enters into a simple contract as though made for himself, and the existence of the principal is not disclosed, the contract inures to the benefit of the principal who may appear and hold the other party to the contract made by the agent. By appearing and claiming the benefit of the contract, it thereby becomes his own to the same extent as if his name had originally appeared as a contracting party, and the fact that the agent has made the contract in his own name does not preclude the principal from suing thereon as the real party in interest."
Dana, 133 Wash.App. at 311, 135 P.3d 963 (alteration in original) (quoting Columbia, 108 Wash. at 126-27, 183 P. 137).
¶ 33 The Dana court noted that "[t]his rule is also set forth in several secondary sources." 133 Wash.App. at 311, 135 P.3d 963 (citing in part Restatement (Third) of Agency § 6.03 (Tentative Draft No. 4, 2003)). But the noted restatement recognizes an exception for personal services contracts and states in relevant part,
The nature of the performance that a contract requires from a third party determines whether an undisclosed principal is entitled to receive that performance. An undisclosed principal may not require that a third party render performance to the principal if rendering performance to the principal would materially change the nature of the third party's duty, materially increase the burden or risk imposed on the third party, or materially impair the third party's chance of receiving return performance. These limits correspond to the limits *287 imposed on assignment of a contractual right. See Restatement (Second) of Contracts § 317(2).
Illustrations:
8. T agrees to work as a nanny for A. P, A's undisclosed principal, cannot require T to work as a nanny for P. The contract between T and A requires that T render personal services in an ongoing close association. Requiring T to render the services to P would materially change the nature of T's duties.
9. T agrees to sell Blackacre in exchange for cash to A, who acts on behalf of P, A's undisclosed principal. P may require performance from T. The contract made by A requires only the payment of money in exchange for Blackacre.
Restatement (Third) of Agency § 6.03 cmt. d, at 44-45 (2006) (emphasis added).
¶ 34 Moreover, Washington cases designate professional services (requiring particular skill or discretion) as personal services and place architectural services in that category. "A contract to render professional services is personal and nonassignable. No person can perform or tender performance except the person therein named, without the consent of the other party to the contract." Deaton v. Lawson, 40 Wash. 486, 490, 82 P. 879 (1905). "It is ... a well settled principle of law that contracts which call for professional personal services requiring special qualifications or skill, are not assignable by the person who has undertaken to perform the services." Lord v. Wapato Irrigation Co., 81 Wash. 561, 576, 142 P. 1172 (1914) (addressing an agreement between the irrigation company and individuals to act as brokers in the acquisition and sale of land as such a "professional personal services contract"), aff'd, 84 Wash. 696, 152 P. 329 (1915); see also Stoddard v. King County, 22 Wash.2d 868, 884, 158 P.2d 78 (1945) (describing an architect's provision of preliminary plans intended to secure a federal grant for a county hospital expansion as "purely personal services").[13]
¶ 35 The nonassignability of personal services contracts as noted in the above cases is significant because such designation corresponds to the limits placed on the above stated general rule. This is so because the nature of the performance that a contract requires determines whether an undisclosed principal is entitled to receive that performance. See Restatement (Third) of Agency § 6.03 cmt. d (2006). Accordingly, Dana and Columbia state the applicable rule regarding "simple contracts," such as cash for goods. But because the present case involves a personal services contract, we hold that the trial court correctly ruled that an undisclosed principal may not enforce performance. See Restatement (Third) of Agency § 6.03 cmt. d (2006).[14]
¶ 36 For the reasons discussed above, we affirm the trial court's summary judgment *288 dismissal of the Kim Children's breach of contract claims regarding the October 19, 2001 architectural services contract between Kim and Moffett.

Attorney Fees
¶ 37 Both parties request attorney fees and costs. Attorney fee requests must be supported by argument and citation to authority. RAP 18.1; State v. Jordan, 146 Wash.App. 395, 404, 190 P.3d 516 (2008). The Kim Children provide no such argument or authority. Moffett asks for fees asserting that the Kim Children's appeal is frivolous. An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there was no reasonable possibility of reversal. Malted Mousse, Inc. v. Steinmetz, 150 Wash.2d 518, 535, 79 P.3d 1154 (2003). That is not the case here. We deny both parties' requests for fees and costs.
¶ 38 For the reasons discussed above, we hold that the trial court erred in dismissing Kim's breach of contract claims based on its erroneous threshold determination that he was not a real party in interest to a contract with Moffett for personal architectural services. We affirm the trial court's dismissal of the Kim Children's claims and we deny both parties' requests for attorney fees and costs.
We concur: HUNT, J., and PENOYAR, A.C.J.
NOTES
[1] Kim appeared and spoke at the commission hearings and is referred to in the minutes as the "owner" of the properties in question.
[2] The trial court further ordered that Kim had three weeks from January 25, 2008, to file an amended complaint in the name of the real party in interest.
[3] Moffett asserted an alternate basis for an order on summary judgment dismissing the claim of the Kim Children. Moffett asserted that he had a right to resign under the terms of the written agreement and that he substantially complied with the agreement by giving actual, but not written, notice of his intent to resign. The trial court did not rule on that portion of Moffett's motion.
[4] We review summary judgment decisions de novo under CR 56(c), viewing the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Anderson v. State Farm Mut. Ins. Co., 101 Wash. App. 323, 329, 2 P.3d 1029 (2000), review denied, 142 Wash.2d 1017, 20 P.3d 945 (2001).
[5] Cf. Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wash.2d 656, 674, 911 P.2d 1301 (1996) ("Interpretation of a contract provision is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence.").
[6] Our Supreme Court has explained the distinction between contract interpretation and construction as follows: "`Interpretation is the process whereby one person gives a meaning to the symbols of expression used by another person.'... `Interpretation of a promise or agreement or a term thereof is the ascertainment of its meaning.' Construction of a contract determines its legal effect. `Construction ... is a process by which legal consequences are made to follow from the terms of the contract and its more or less immediate context, and from a legal policy or policies that are applicable to the situation.'" Berg v. Hudesman, 115 Wash.2d 657, 663, 801 P.2d 222 (1990) (quoting 3A Corbin, Contracts § 532, at 2 (1960); Restatement (Second) of Contracts § 200 (1981); The Interpretation and Construction of Contracts, 64 Colum. L.Rev. 835 (1964)).
[7] Presumably, the Kim Children are referring to the trial court's denial of Kim's motion for reconsideration.
[8] The court rule further provides,

An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
CR 17(a).
[9] "Standing is a `party's right to make a legal claim or seek judicial enforcement of a duty or right.'" State v. Link, 136 Wash.App. 685, 692, 150 P.3d 610 (quoting Black's Law Dictionary 1442 (8th ed.2004)), review denied, 160 Wash.2d 1025, 163 P.3d 794 (2007).
[10] See also Restatement (Third) Agency, § 6.03 cmt. e at 45 (2006) ("As a party to a contract made on behalf of an undisclosed principal, an agent may sue the third party in the agent's own name.") (emphasis added).
[11] As to Kim's rights under the contract, the plain and unambiguous language of the contract controls. See Hearst Commc'ns., Inc. v. Seattle Times Co., 154 Wash.2d 493, 503, 115 P.3d 262 (2005) (a court may go outside the plain language of a contract only to determine the meaning of specific words and terms used and not to show an intention independent of the instrument or to vary, contradict, or modify the written word). As noted, the October 19, 2001 contract contained an integration clause specifying that it was the "entire agreement" and expressly excluded "any provisions not included herein." CP at 136. The contract does not contain a specific time line nor does it require project completion or the obtaining of a building permit as prerequisites to payment. Here, Moffett performed architectural services, billed Kim periodically for the work performed, and Kim paid for those services seemingly in accordance with the contract terms. Cf. Quadrant Corp. v. Am. States Ins. Co., 154 Wash.2d 165, 172, 110 P.3d 733 (2005) (in Washington, the expectations of the insured cannot override the plain language of the contract).
[12] Moffett argues an alternative basis for affirming the trial court. He correctly notes that the architectural services contract provides that he may resign "for cause upon written notice." CP at 136. It is undisputed that Moffett gave, and Kim received, notice that Moffett was resigning in late January or early February of 2002, and that Moffett moved to California at that time. Because that notice was verbal rather than written, Moffett argues that he substantially complied with the contract's resignation provision. The trial court did not reach this issue. Moffett is free to raise the matter on remand.
[13] Cf. RCW 18.100.030(1). In a different context, the legislature enacted ch. 18.100 RCW to authorize the creation of professional corporations that provide services requiring legal authorization for individual practitioners. See RCW 18.100.010. Within that chapter, the legislature specifically defined "professional service" to include "personal service" such as that provided by an "architect." RCW 18.100.030(1).
[14] In challenging the trial court's dismissal of their claim, the Kim Children do not mention Dana and instead challenge the ruling, arguing that under Berschauer/Phillips Construction Co. v. Seattle School District No. 1, 124 Wash.2d 816, 881 P.2d 986 (1994), the claim that Moffett breached the contract was assignable to them. But Berschauer is distinguishable. There, our Supreme Court addressed the efficacy of a contract's anti-assignment clause in light of a clear assignment of a claim alleging breach of contract following completed performance. Berschauer, 124 Wash.2d at 820, 829. 881 P.2d 986. There is no such clause or assignment here. See Amende v. Town of Morton, 40 Wash.2d 104, 106-07, 241 P.2d 445 (1952) (to be valid, an assignment must clearly identify the subject matter of the assignment and effectively relinquish control); Demopolis v. Galvin, 57 Wash.App. 47, 53-54, 786 P.2d 804 (same), review denied, 115 Wash.2d 1006, 796 P.2d 1263 (1990). Also, there was no undisclosed principal in Berschauer. Accordingly, Berschauer is simply too different factually to be of any guidance here.

Moreover, while Berschauer noted the general rule that contracts are assignable unless such assignment is expressly prohibited by statute, contract, or is in contravention of public policy, see 124 Wash.2d at 829, 881 P.2d 986, an exception to this general rule of assignability provides that rights involving a relation of personal confidence or a personal service cannot be assigned. Robbins v. Hunts Food & Indus., Inc., 64 Wash.2d 289, 294, 391 P.2d 713 (1964).