FILED
COURT OF APPEALS
DIVISION II

2013 SEP -4 AM 10: 20

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Guardianship of CAROLYN K. PLOTKE, | |
| An incapacitated person. | No. 42984-5-II |
| LEO K. PLOTKE, | |
| Appellant, | |
| v. | |
| YVONNE POLKOW, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, A.C.J. — Leo K. Plotke signed a memorandum of agreement that established an IOLTA (Interest on Lawyer Trust Account) account to pay for his wife Carolyn K. Plotke's[1] medical care and special needs. Leo appeals the superior court's order denying his request that certain home maintenance costs be paid out of the IOLTA account. He argues that the superior court erred in finding that the parties' memorandum of agreement did not cover the requested costs. We disagree and affirm the superior court.

---

[1] To avoid confusion, we use their first names, intending no disrespect.

FACTS

Leo and Carolyn are an elderly, married couple.[2] In 2008, the superior court declared Carolyn to be a vulnerable adult and entered a temporary protection order restraining both Leo and Carolyn's daughter from contact with Carolyn. Carolyn was removed from the couple's home and has since resided at the Fort Vancouver Convalescent Center where she receives ongoing assistance with all activities of daily living due to her extensive history of serious health conditions. Leo has continued to live in the couple's home in Clark County. The court appointed Yvonne Polkow as Carolyn's personal guardian and appointed Thomas Deutsch as guardian ad litem to investigate the couple's finances and recommend how the couple would finance Carolyn's necessary long-term care. Then, after concerns arose about Leo inappropriately managing the couple's finances, the court appointed Polkow as guardian of Carolyn's estate as well.

In 2009, Leo and his attorney, Dee Ellen Grubbs; Polkow and her attorney, Therese Greenen; and Deutsch's attorney, Margaret Phelan, signed a memorandum of agreement (Memorandum) that outlined the parties' plan and respective duties regarding Leo and Carolyn's finances. Leo agreed to be financially responsible for Carolyn's necessary long-term care and special needs. Carolyn agreed to transfer all her assets into Leo's name, thus qualifying her for Medicaid. In return, Leo was to deposit funds for Carolyn's care into a trust account on a monthly basis.

---

[2] This case involves the same parties as a prior opinion from this court in July 2012. *Plotke v. Plotke*, noted at 169 Wn. App. 1037 (2012). Unless otherwise noted, the facts in this paragraph come from that opinion.

The Memorandum also provided that the superior court would retain continuing jurisdiction over all community funds and all of Leo's separate funds. In the event Carolyn died or no longer had special needs, any remaining funds would be distributed to Leo. If Leo became unable to pay for Carolyn's care, he would apply for a reverse mortgage on the couple's home, which was then in his name only. A short time later, Leo apparently became unable to pay for Carolyn's care and obtained a reverse mortgage from Genworth Financial.

At first, Leo failed to use the reverse mortgage money for Carolyn's care. As a result, in December 2010, the superior court ordered that Leo direct Genworth Financial to place approximately $82,000 from the reverse mortgage into an IOLTA account for Carolyn's expenses. The court also ordered that Leo direct Genworth Financial to disburse approximately $4,600 each month into the IOLTA account for Carolyn's care and needs, beginning in January 2011. The court's order also provided that Leo was "restrained from removing any other funds from Genworth Financial other than those funds as stated herein without approval of the Court. . . . Failure of [Leo] to comply with the terms of this agreement will result in incarceration due to contempt of court." Clerk's Papers (CP) at 102. This order was not appealed.

In August 2011, Leo moved to disburse funds from the IOLTA account for the payment of property taxes, homeowner's insurance, septic tank maintenance, hot water heater repair, and attorney fees for Leo's appellate counsel, Christopher Hardman, for Leo's earlier appeal. Polkow responded that she agreed that the IOLTA account should pay the property taxes but that

3

the court should deny Leo's remaining requests because they were solely for his personal needs and did not fall within the Memorandum's parameters. The court approved the property tax request but denied Leo's remaining requests.

In October 2011, Leo again moved the superior court to disburse funds from the IOLTA account for homeowner's insurance, septic tank maintenance, hot water heater repair, and attorney fees for Hardman and for Grubbs. Leo called this motion a "Renewed/Amended Motion." CP at 133. Polkow responded the same way as she did to the August motion and argued that CR 11 sanctions be granted against Leo for bringing the same motion that the superior court had already ruled on. The court again denied the motion in its entirety. In its oral ruling, the court explained that the requested monies were Leo's responsibility, that he needed to take responsibility for his poor financial decisions in the past, that the IOLTA account was to be used for Carolyn's care, and not for the expenses that Leo was requesting.

Grubbs then asked the court about the requested attorney fees for herself and for Hardman and the court stated that

> I'm not at this time going to make any additional award of attorney's fees. But I'll reserve on that . . . .
> . . . I don't anticipate this case going away very soon, so at some point we'll have to sit down and—I'll have to sit down and make some decisions on that.

Report of Proceedings (RP) at 55-56. Our record contains no further attorney fee motions or orders. Leo timely appeals.

ANALYSIS

Leo argues that Polkow breached the Memorandum by not paying the requested monies from the IOLTA account and that the superior court erred in denying his requests.[3] Polkow responds that the parties intended that the IOLTA funds be used only for Carolyn's care and that the Memorandum does not allow Leo to access the funds for any other purpose.

Turning to Leo's request for homeowner's insurance, septic tank maintenance, and hot water heater repair, we must determine whether the Memorandum provided for these expenses to be paid from the IOLTA account. We review questions of law, including the interpretation of contract provisions, de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). We apply fundamental contract construction rules when interpreting a contract and to the extent we interpret contract provisions; we apply the de novo standard of review. *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 487, 209 P.3d 863 (2009); *Kim v. Moffett*, 156 Wn. App. 689, 697, 234 P.3d 279 (2010).

In construing a contract, we give the parties' intent as expressed in the instrument's plain language controlling weight and give words in a contract their ordinary meaning. *Cambridge Townhomes, LLC*, 166 Wn.2d at 487; *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982). Also, we may discover parties' intent from "'viewing the contract as a whole, the

---

[3] Leo also argues that the Memorandum is enforceable because it was merged into a court order. However, Polkow does not dispute that the Memorandum is enforceable. Therefore, merger is inapplicable here; and, instead, the issue more properly before us is the superior court's interpretation of the Memorandum. Leo also claims the superior court erred in denying his attorney fee request. But whether the superior court should have granted Leo's requests for attorney fees is not properly before us for review. The superior court's oral ruling clearly states that it reserved its ruling on attorney fees for another time. Our record does not reveal whether the superior court eventually ruled, but until the superior court does so, there is no final judgment on attorney fees and the issue is not properly before us on appeal. RAP 2.2(a).

subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" *In re Marriage of Litowitz*, 146 Wn.2d 514, 528, 48 P.3d 261 (2002) (internal quotation marks omitted) (quoting *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wn.2d 573, 580-81, 844 P.2d 428, *cert. denied*, 537 U.S. 1191 (2003) (citations omitted). But the parties' subjective intent is generally irrelevant if we can determine their intent from the actual words used in the contract. *Hearst Commc'n, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503-04, 115 P.3d 262 (2005).

Leo provides no legal analysis for his argument that the superior court should have approved his IOLTA funds requests. Leo does not even argue that the Memorandum's provisions are ambiguous. Leo asks that we review his motions made at superior court to support his argument on appeal. These motions specified that the basis for his motions was that the requested funds were a "special need" of Carolyn's because the expenses were for the maintenance of the couple's community property home and that if such expenses were not paid, the home may be subject to foreclosure. CP at 51, 133. And if the home was foreclosed, there would be no funding for the IOLTA account.

But the Memorandum clearly outlines Leo's responsibility for Carolyn's medical bills, and other continuing special needs. The Memorandum specifies that such "special needs . . . include, but are not limited to, the services of a professional guardian, attorney fees for the professional guardian, services from Geromedical Psychological[,] and eyeglasses." CP at 127. Viewing the Memorandum as a whole and giving the words "special needs" their plain and ordinary meaning, the Memorandum simply does not provide for Leo's home maintenance costs

to be paid out of the IOLTA account. Leo's argument about the home potentially being foreclosed if his requested costs are not paid is an interesting one, but it fails simply because the Memorandum does not provide that the IOLTA funds would be used to maintain the home or ensure that it will not be foreclosed. The IOLTA account was set up for Carolyn's medical bills and continuing special needs. Accordingly, Leo's argument that Polkow is in breach for failing to pay the requested costs also fails because the Memorandum does not require Polkow to pay them.

In his reply, Leo asserts that his arguments on appeal center on the superior court's failure to enforce the parties' Memorandum. But, the superior court did enforce the Memorandum, it just did not interpret the Memorandum in Leo's favor. Also, Leo's reply appears to change his argument to assert that all IOLTA funds in excess of a certain amount should be disbursed to him. But again, the Memorandum's plain language provides that funds from the IOLTA account will be distributed to him only if Carolyn's special needs discontinue or in the event of Carolyn's death. These are the only times that Leo is entitled to the IOLTA funds and he does not argue that either of these things has occurred. Furthermore, the superior court ruled on the motion that Leo presented, which was for the specific home maintenance costs, not that control of the account should be turned over to him. The superior court did not err and we affirm.

## ATTORNEY FEES

Both parties request attorney fees on appeal. Leo does not prevail; thus he is not entitled to attorney fees. Stating Leo's appeal is frivolous, Polkow also requests attorney fees.

RAP 18.1(a) provides that we may award attorney fees on appeal where authorized by applicable law. RAP 18.9(a) authorizes us, on a motion or sua sponte, to sanction a party who (1) uses the rules of appellate procedure for purposes of delay, (2) files a frivolous appeal, or (3) fails to comply with the rules of appellate procedure. In determining whether an appeal is frivolous, five considerations guide us: (1) a civil appellant has a right to appeal; (2) we resolve any doubts about whether an appeal is frivolous in the appellant's favor; (3) we consider the record as a whole; (4) an unsuccessful appeal is not necessarily frivolous; and (5) an appeal is frivolous if it raises no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists. *Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986); *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 619, 94 P.3d 961 (2004). If an appeal is frivolous, we may award respondent's attorney fees for having to defend against the frivolous appeal. *West v. Thurston County*, 169 Wn. App. 862, 867-68, 282 P.3d 1150 (2012), *review denied*, 176 Wn.2d 1012 (2013); *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012).

Here, Leo does not raise any debatable issues on which reasonable minds might differ and no reasonable possibility of reversal exists. This appeal is frivolous and we exercise our discretion to award Polkow attorney fees for defending against this frivolous appeal upon compliance with RAP 18.1.

No. 42984-5-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Quinn-Brintnall, J.

_____
Dalton, J.P.T.

9